IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-4052-01/19-CR-C-BCW |
| ) | |
| CHARLES STERLING AUSTIN, JR., ) | |
| PUFF N SNUFF, LLC., ) | |
| ALEXANDER V. MCMILLIN, ) | |
| PATRICK R. HAWKINS, ) | |
| MATTHEW A. HAWKINS, ) | |
| MOLLY JANE CARMICHAEL, ) | |
| WESLEY ADAM UPCHURCH, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Defendants Charles Sterling Austin, Jr., and Puff N Snuff, LLC. (collectively, the "PNS defendants") (doc. 222); Alexander V. McMillin (doc. 218); Patrick R. Hawkins (doc. 221); Matthew A. Hawkins (doc. 220); Molly Jane Carmichael (doc. 219); and Wesley Adam Upchurch (doc. 217) have filed motions to dismiss various counts of the Superseding Indictment.[1] The Government has filed suggestions in opposition to each of the defendant's motions to dismiss. (Docs. 235 and 236). Defendants McMillin, Patrick Hawkins, Matthew Hawkins, and Carmichael filed reply suggestions in support of their motions (docs. 267-271), in response to which, the Government filed a sur-reply (doc. 272).[2]

**A. Background**

The above defendants and others are charged in a thirteen count Superseding Indictment alleging a conspiracy to distribute analogue drugs in mid-Missouri during the time period from March 1, 2011, to October 2, 2014. (Doc. 146). The Superseding Indictment charges various defendants with conspiracy to commit mail fraud, conspiracy to distribute controlled substances,

---

[1] The motions filed on behalf of defendants Upchurch, McMillin, Patrick Hawkins, Matthew Hawkins, and Carmichael requesting dismissal of the Superseding Indictment restate the same arguments. (Docs. 217-221).

[2] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

conspiracy to commit money laundering, distribution of controlled substances, maintaining a place for the purpose of storing and distributing controlled substances, and criminal forfeiture.

Specifically, Count One of the Superseding Indictment charges defendants Upchurch McMillin, Matthew Hawkins, Patrick Hawkins, Carmichael, the PNS defendants, and others with conspiracy to commit mail fraud in violation of Title 18, United States Code, Sections 1341 and 1349.

Count Two of the Superseding Indictment charges all defendants with conspiracy to distribute a controlled substance, specifically (1) 1-Pentyl-3-(2,2,3,3-tetramethylcyclopropyl) indole (hereafter UR-144); and (2) 1-(5-Fluoropentyl)-3-(2,2,3,3-tetramethylcyclopropyl) indole (hereafter XLR-11), each a controlled substance analogue as defined in 21 U.S.C. § 802(32)(A), knowing that each substance was intended for human consumption as provided in 21 U.S.C. § 813, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Count Three of the Superseding Indictment charges defendants McMillin, Matthew Hawkins, Patrick Hawkins, Carmichael, Austin, and others with conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1957(a) and 1956(h).

Count Four of the Superseding Indictment charges defendant McMillin with possession with intent to distribute a controlled substance in violation Title 21, United States Code, Sections 802(32), 813, and 841(a)(1) and (b)(1)(C).

Count Seven of the Superseding Indictment charges defendant McMillin with distribution of a controlled substance in violation of Title 21, United States Code, Sections 802(32), 813, and 841(a)(1) and (b)(1)(C).

Count Eleven of the Superseding Indictment charges defendant Austin with maintaining a place for the purpose of storing and distributing a controlled substance in violation of Title 21, United States Code, Section 856(a)(1).

The Superseding Indictment also contains two criminal forfeiture allegations applicable to defendants McMillin, Matthew Hawkins, Patrick Hawkins, Carmichael, and the PNS defendants.

### B. Standard of Review

The Eighth Circuit has set the following standard of review regarding a motion to dismiss based upon the sufficiency of an indictment:

> An indictment adequately states an offense if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution. An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted."

United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (quoting United States v. Hernandez, 299 F.3d 984, 992 (8th Cir. 2002)). An indictment is normally sufficient if its language tracks the statutory language. Hamling v. United States, 418 U.S. 87, 117 (1974).

### C. Legal Analysis

The PNS defendants assert four arguments in support of their motion to dismiss the Superseding Indictment. First, the indictment should be dismissed because it fails to state a claim. Specifically, the indictment fails to charge facts which constitute an offense because XLR-11 and UR-144 are not controlled substance analogues; the indictment fails to charge the mental state necessary to constitute an offense, that is, knowledge that XLR-11 or UR-144 were controlled substance analogues and the defendants had knowledge of their unlawful nature. Second, the indictment should be dismissed because the Analogue Act is unconstitutional as applied to XLR-11 and UR-144 and the Court may consider defendants' vagueness challenge; there is uncertainty regarding the meaning of "substantially similar" with respect to chemical structure because there is no scientific consensus that XLR-11 and UR-144 are "substantially similar" to JWH-018 or any other scheduled substance; and the second prong of the Analogue Act is unconstitutionally vague as applied to XLR-11 and UR-144. Third, the indictment should be dismissed because re-subdelegation of Legislative power within the Department of Justice exceeds the delegation of authority granted by Congress, and the concentration of power resulting from the re-subdelegation of Legislative power violates the Due Process Clause. Finally, the indictment should be dismissed because it fails to state a claim for conspiracy under Counts I, II, and III. Specifically, the indictment fails to adequately allege a shared purpose or agreement among the defendants; and as to the mail fraud charge under Count I, the indictment fails to allege that the defendants intended to defraud nor is there a property right involved that would implicate the mail fraud statute. (Doc. 222 at 24-28).

Defendants Upchurch, McMillin, Matthew Hawkins, Patrick Hawkins and Carmichael raise similar arguments in support of their motions to dismiss the Superseding Indictment. First,

3

they contend that 21 U.S.C. §§ 802(32)(A) and 813 are void for vagueness under the Due Process clause of the United States Constitution. More specifically, "the constitutional violation with regard to the statute stems from the vagueness of the term 'substantially similar'." (Docs. 217-221 at 3). Second, they contend that 21 U.S.C. §§ 802(32)(A) and 813 are overbroad in "that it could be applied to substances which are well-established to be legal and are widely used by the public, such as coffee, alcohol and tobacco." (Docs. 217-221 at 5). Third, they contend the statute is unconstitutional as "the temporary scheduling of XLR-11 and UR-144 was an unconstitutional sub-delegation of authority from Congress, to the Attorney General, to the Administrator of the DEA, and ultimately to a Deputy Administrator." (Docs. 217-221 at 8).

The Government disagrees and has filed suggestions in opposition to each of the defendant's motions (docs. 235 and 236), incorporating by reference its earlier responses in opposition (docs. 131 and 144) to defendants' motions to dismiss the original indictment.

The Analogue Act states that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any federal law as a controlled substance in schedule I." 21 U.S.C. § 813. The Analogue Act defines the term controlled substance analogue as follows:

> Except as provided in subparagraph (C), the term "controlled substance analogue" means a substance—
>
> > (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> >
> > (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> >
> > (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

"Under [the Analogue Act], a drug becomes a controlled substance if it has a chemical structure substantially similar to that of a controlled substance [in schedule I or II], and either has a substantially similar effect on the user's central nervous system, or a relevant someone [e.g., a defendant] represents that it has or intends it to have such an effect." United States v.

4

McKinney, 79 F.3d 105, 107-108 (8th Cir. 1996), vacated on unrelated grounds, 520 U.S. 1226 (1997).  In McKinney, the Eighth Circuit stated "[b]ecause manufacturers of illegal drugs have become adept at tinkering with the molecular structure of [scheduled] controlled substances while retaining the effects that those substances produce, the analogue statute is aimed at prohibiting innovative drugs before they are specifically listed in the schedules as controlled substances." Id. at 107.  A requirement that the government identify and label each analogue individually before a prosecution could be pursued would essentially eviscerate the analogue statute, and such an argument has been repeatedly rejected by federal courts, including the Eighth Circuit.  E.g., United States v. Washam, 312 F.3d 926, 932 (8th Cir. 2002) ("Congress did not state that distributors of analogues must be warned prior to enforcement of the statute."); United States v. Sullivan, 714 F.3d 1104, 1107 (8th Cir. 2013) ("The [Analogue Act] does not, however, require the DEA to classify a substance as a controlled substance analogue before the substance falls under its purview.").

In addition to satisfying the definition of an analogue as set forth in 21 U.S.C. § 802(32)(A), the government must prove, at trial, that: (1) the defendants knew they were distributing (or possessing with the intent to distribute) controlled substance analogues, and (2) that the analogues were intended for human consumption.  See 21 U.S.C. § 813; see also Sullivan, 714 F.3d at 1107.  The Eighth Circuit has adopted the Seventh Circuit's requirement, first explained in United States v. Turcotte, that the defendant must have known that the substance(s) at issue was a controlled substance analogue.  United States v. Bamberg, 478 F.3d. 934, 939-40 (8th Cir. 2007) (discussing United States v. Turcotte, 405 F.3d 515 (7th Cir. 2005)); Sullivan, 714 F.3d at 1107 (8th Cir. 2013).  With respect to defendants' assertion that the Analogue Act statute, 21 U.S.C. § 813, is unconstitutionally vague, the Court recognizes that "vague statutes are void" under the Fifth Amendment's guarantee that every citizen is entitled to due process.  Washam, 312 F.3d at 929.  The law must provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).  Therefore, "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975).

"In determining whether a statute is unconstitutionally vague on the facts at hand," the Court applies a two-part test: 1) "the statute must provide adequate notice of the proscribed

5

conduct"; and 2) "the statute must not lend itself to arbitrary enforcement." Washam, 312 F.3d at 929. Defendants' vagueness challenge to the Analogue Act stemming from the term "substantially similar" is not persuasive. (Docs. 217-221 at 3-7; Doc. 222 at 11-12). When considering whether the Analogue Act is impermissibly vague, the Court looks to the legal definition of a statutory term, not the scientific definition. See United States v. Brown, 279 F. Supp. 2d 1238, 1240 (S.D. Ala. 2003) ("Since the Analogue Act does not indicate that the term 'substantially similar' is to be defined as it is used scientifically, the court will interpret those words as they are used in everyday language."). In other words, the Court looks to the words and determines if someone of common intelligence would be able to understand what conduct has been prohibited.

The Eighth Circuit has rejected the argument that the phrase "substantially similar" renders the Analogue Act void for vagueness. See McKinney, 79 F.3d at 107. In McKinney, the Eighth Circuit explained that "[w]hile doubts as to the applicability of the language in marginal fact situations may be conceived, we think that the statute gave defendant adequate warning that his conduct was a criminal offense" and that "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." Id. at 108 (internal quotations omitted). Courts have emphasized that numerous other considerations can be taken into account in determining substantial similarity of substances, including the "effects on the human body". See e.g., Washam, 312 F.3d at 932; Brown, 279 F. Supp. 2d at 1243 ("[E]ffects on the human body under the second part of the statute may be considered when determining substantial similarity of chemical structure under the first part of the statute.").

Defendants also argue that the statute should be void for vagueness as applied here because there is a lack of consensus among experts as to whether a particular substance is "substantially similar" to a scheduled analogue. (Doc. 222 at 11-12). The PNS defendants contend that the scientific consensus is that the substances charged in this case are not analogues of any controlled substance. (Doc. 222 at 7-8). The defendants' argument has been rejected by the Eighth Circuit in McKinney.

In McKinney, the court framed the defendant's argument as follows:

Mr. McKinney argues that the statute is unconstitutionally vague because there is a lack of scientific consensus that aminorex and phenethylamine are analogues . . . He urges that if experts disagree as to whether the chemical structure of one drug

6

>is substantially similar to a controlled substance, then the statute is
>unconstitutionally vague as to that drug.

79 F.3d at 108. The court then rejected the argument by explaining that, "a reasonable layperson could, for example, have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar." Id. This holding has been reaffirmed by the Eighth Circuit and followed by numerous courts. E.g., Washam, 312 F.3d at 931 ("We have held that all experts need not agree on whether two drugs' chemical structures are 'substantially similar' in order to affirm a conviction under the Analogue Statute."); United States v. Orchard, 332 F.3d 1133, 1137-38 (8th Cir. 2003); Bamberg, 478 F.3d at 938; see also Brown, 279 F. Supp. 2d at 1241 (relying on McKinney and holding that "it is apparent to the court that the phrase 'substantially similar,' as contained in the Analogue Act, does not hinge on how a scientist would interpret the term, but how ordinary people use the language"); United States v. Granberry, 916 F.2d 1008, 1010 (5th Cir. 1990) (holding that there was "nothing vague about the statute" at issue here).

Defendants cite United States v. Forbes to support their argument that the experts must agree and if they do not the statute is thus void for vagueness (docs. 217-221 at 3). 806 F.Supp 232 (D. Colo. 1992). In support of this proposition, the defendants assert "[i]t cannot be and must not be the law of the land that a statute is only vague if the prosecution experts disagree." (e.g. Docs. 217-221 at 3). However, Forbes has been rejected by the Eighth Circuit. See, e.g., Washam, 312 F.3d at 932 ("experts need not agree for there to be a finding that a chemical is an analogue"); McKinney, 79 F.3d at 108 (rejecting that there must be scientific consensus to defeat a vagueness challenge and finding that the proper inquiry is whether "a reasonable layperson could . . . have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar."); see also Brown, 279 F.Supp.2d at 1241; United States v. Fedida, 942 F. Supp. 2d. 1270, at 1279 n. 6 (M.D. Fl. 2013) ("The differing opinions of experts on the issue of substantial similarity does not, however, render the Analogue Act vague. Rather, such testimony should be presented to the trier of fact, who will decide the relative strengths and merits of the methodologies supporting the experts' opinions" (internal citation omitted)).

Here, the defendants' claim that there is a possible lack of agreement or consensus on a methodology to determine substantial similarity, may be a basis to attempt to discredit an expert's opinion at trial. (Doc. 222 at 12). It does not, however, render the Analogue Act

7

impermissibly vague.  See Brown, 279 F. Supp. 2d at 1242 ("[D]iffering methodology in reaching a conclusion on substantial similarity does not render the statute vague, but may tip the scales one way or the other on the issue in the mind of the trier of fact depending on the relative strength of the analysis").

Defendants assert that the words "substantially similar" render the Analogue Act void for vagueness on its face because Congress chose a lesser scienter requirement.  (Docs. 217-221 at 3).  This position is misguided.

The Eighth Circuit held in Sullivan that one of the elements the government is required to prove at trial is that the defendant "knew he was in possession of a controlled substance analogue."  714 F.3d at 1107.  Such a showing may rely, in part, on the defendant's conduct in dealing or addressing the substance with others.  Id.  (holding that "[a] reasonable juror could find [the defendant] knew he was in possession of a controlled substance analogue" because "[w]hen [a police officer] asked [the defendant] whether the vehicle contained anything illegal, [the defendant] told him the vehicle contained bath powder").  Due process concerns about notice are ameliorated "[b]ecause the [Analogue Act] contains a scienter requirement that the defendant know the substance was an [analogue]."  United States v. Long, 15 F. Supp. 936, 942 (D. S.D. 2014) citing Turcotte, 405 F.3d at 531; see also Gonzales v. Carhart, 550 U.S. 124, 149 (2007).

Here, if defendants assert at trial that they had no knowledge of the "substantially similar" quality of the substances charged, they will each have the opportunity to present any evidence they have to convince the jury that he/she did not know he/she was in possession of a controlled substance analogue.  See Sullivan, 714 F.3d at 1107.

Likewise, with respect to the argument regarding the "effects prong" of the analogue statute, differences in studies and expert testimony regarding whether a particular substance has a substantially similar effect on the human body is also a jury issue.  Jurors can hear the testimony, give it such weight as they believe it should receive, and base their decision on the testimony they find more persuasive.  The fact that the studies and experts may disagree on the effects of the particular substance on the human body goes to the weight of the evidence.  It does not render the statute impermissibly vague.  At trial, defendants may make a challenge to the sufficiency of the evidence after the government has been provided an opportunity to present its evidence regarding the substantial similarity of the alleged controlled substances and their

8

alleged analogues.  See United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001) (explaining that "[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29" and that the Court "cannot approve dismissal of an indictment on the basis of predictions as to what the trial evidence will be." (quoting United States v. DeLaurentis, 230 F.3d 659, 661 (3d. Cir. 2000)); see also United States v. Sullivan, No. 4:11CR3034, 2011 WL 3957425 at *2 (D. Neb. Aug. 17, 2011) (Mag. R&R) adopted by 2011 WL 3957271 (D. Neb. Sep. 7, 2011), aff'd, 714 F.3d 1104 (holding that defendant's motion to dismiss the Analogue Act claim could not be resolved by the Court, because the sufficiency of evidence as to each element of the Analogue Act must be determined by a jury after a full trial); United States v. Klecker, 348 F.3d 69, 72 (4th Cir. 2003) ("Whether a particular substance qualifies as a controlled substance analogue is a question of fact."); Niemoeller, 2003 WL 1563863, at *6 (explaining that "[w]hether the government may ultimately meet its burden remains [for trial]"); Fedida, 942 F. Supp. 2d at 1272-1273 (concluding that the defendant's challenges regarding the substantial similarity of the chemical structure of the alleged substances were "challenges to the sufficiency of the evidence, not the Indictment").

As a general matter, a criminal statute is unconstitutionally vague if it does not sufficiently define an offense such that ordinary people can understand what conduct is prohibited.  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  This inquiry generally requires an examination of what a person of "common intelligence" would reasonably understand the statute to prohibit, rather than what a particular defendant understood that statute to mean.  See, e.g., Washam, 312 F.3d at 930; United States v. McFadden, 753 F.3d 432, 439 (4th Cir. 2014) (the most recent Circuit decision rejecting a vagueness challenge to the Analogue Act).

Defendants' contention that the Analogue Act is vague in that it could be applied to widely used legal substances is not persuasive.  It appears that defendants are asserting that the analogue statute lends itself to arbitrary enforcement, and therefore fails the second part of the statutory due process inquiry.  The Court disagrees.  In rejecting a similar argument that the Analogue Act is unconstitutionally vague because it could be applied to other legal products, the Eighth Circuit in Washam reasoned "that this problem was addressed by the Analogue Statute because the statute requires a showing of structural similarity *and* similar effect on the human body (or intent for there to be such an effect)."  312 F.3d at 933 (examining defendant's position

9

that if the charged substance of 1,4Butanediol could be proscribed by the Analogue Act, so could the common food additive MSG).

Here, the Court finds the compelling weight of authority persuasive, including the Eighth Circuit opinions in McKinney[3] and Washam, that the Analogue Act is not unconstitutionally vague in spite of the fact that defendants may claim he/she was not personally and specifically warned prior to the charges being filed in this case.

Defendants also contend the indictment should be dismissed because Congress impermissibly delegated authority to temporarily schedule controlled substances to the Executive Branch by conferring authority on the Attorney General (doc. 217-221 at 8), and because the Attorney General impermissibly subdelegated this authority to the DEA (doc. 222 at 20-21). See 21 U.S.C. §§ 811(h) and 871(a). The PNS defendants specifically argue that "the resulting concentration of criminal legislative, investigative, law enforcement and prosecutorial power in a single executive branch law enforcement official violates due process." (Doc. 222 at 21). Although the PNS defendants separately couch their argument as a due process challenge, the claims raised by defendants in both of the subject motions are without merit as the United States Supreme Court has already considered and rejected the defendants' arguments on this exact same issue in the context of the nondelegation doctrine in Touby v. United States. 500 U.S. 160, 164-169 (1991). In Touby, the Supreme Court stated:

---

[3] In their reply suggestions, Defendants McMillin, Patrick Hawkins, Matthew Hawkins, Carmichael, and Upchurch contend that "the survival and validity of McKinney as precedent on [the issue of their vagueness challenge] is in serious doubt". (Docs. 267-271 at 2). McKinney was convicted of drug trafficking under the Analogue Act as well as a weapons charge under 18 U.S.C. § 924(c). 79 F.3d at 106. The United States Supreme Court's reversal of the Eighth Circuit's opinion in McKinney was limited to the issue of the weapons charge against McKinney. On remand, the Eighth Circuit when reviewing McKinney's case a second time, adopted their earlier opinion as properly resolving all other issues. United States v. McKinney, 120 F.3d 132, 133 (8th Cir. 1997). Defendants also appear to assert that unlike here, McKinney had actual notice that their chemical structures were substantially similar to scheduled substances. Defendants misinterpret the holding in McKinney with respect to the reference to chemical charts. The Eighth Circuit in McKinney reasoned that the defendant was afforded adequate notice that his conduct could be considered illegal because a "reasonable layperson *could, for example,* have examined a chemical chart and intelligently decided for himself or herself, by comparing their chemical diagrams, whether the chemical structure of two substances were substantially similar". 79 F.3d at 108 (emphasis added). Consequently, the Court is not persuaded by defendants' argument that McKinney is not good precedent here despite defendants' claims that they have "not submitted any chemical charts". (Doc. 267 at 2).

10

> We have long recognized that the nondelegation doctrine does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches. Thus, Congress does not violate the Constitution merely because it legislates in broad terms, leaving a certain degree of discretion to executive or judicial actors. So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power."

Id. at 165 (internal citation omitted) (quoting J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928)). The Supreme Court in Touby ultimately found that such delegation of authority passes constitutional muster.[4] Id. at 167-169.

Finally, the PNS defendants argue that Counts II, III, and XI should be dismissed because (1) the substances at issue are not controlled substance analogues, (2) the indictment fails to charge a mental state, and (3) the Analogue Act underlying the charged offenses is unconstitutional. The Court has already addressed the PNS defendants' third argument by having concluded that Eighth Circuit precedent supports that the analogue provision is not unconstitutionally vague in the instant case. As to the PNS defendants' first and second arguments, the Court has also explained that the question of whether the charged substances constitute a controlled substance analogue is a question for the jury and that the defendants will have the opportunity at trial to present any evidence that they did not know they were in possession of a controlled substance analogue. The Court is not persuaded that the Superseding Indictment is insufficient by not expressly stating that defendants knew that the charged substances were controlled substance analogues. To the contrary, the indictment tracks the relevant statutory language for the offense under the Analogue Act and adequately notifies defendants of the charges against them. See Fedida, 942 F. Supp. 2d at 1273 ("The indictment contains the language used in the statute; it gives notice as to what specific conduct is charged; and it apprises Defendant of the charges he must be prepared to meet at trial. The rule requires

---

[4] The PNS defendants assert that the signature of the DEA Deputy Administrator rather than the Administrator on an emergency scheduling order dated May 16, 2013, which temporarily listed the charged substances, is outside the authority delegated from the Attorney General to the DEA in accordance with 21 U.S.C. § 871(a). (Doc. 222 at 21-22). After having concluded that Supreme Court precedent establishes that the Attorney General's delegation of the temporary scheduling power to the DEA was permissible, the Court rejects this argument. See Touby, 500 U.S. at 169 (reasoning that the "Act states plainly that 'the Attorney General may delegate any of his functions under [the Controlled Substances Act] to any officer or employee of the Department of Justice'" and nowhere in the statute is that delegation authority specifically limited (internal citation omitted)).

11

nothing more."); see also United States v. Villarreal, 707 F.3d 942, 957 (8th Cir. 2013) ("An indictment need not use the specific words of the statute, so long as 'by fair implication' it alleges an offense recognized by law." (citing United States v. Pennington, 168 F.3d 1060, 165 (8th Cir. 1999)). Moreover, defendants' pleadings reflect that they are fully aware of the charges against them and how to defend against them should this case proceed to trial.

The PNS defendants also argue that the conspiracy offenses charged in Counts I, II, and III should be dismissed because the Superseding Indictment fails to adequately allege that the defendants shared a common purpose or overall agreement. (Doc. 222 at 24). The PNS defendants assert that these counts are insufficient to charge a conspiracy in that the counts contain conclusory allegations following statutory language and lack specific allegations. Specific to the mail fraud charge, the PNS defendants argue that the indictment fails to allege that the defendants intended to defraud, and it lacks an allegation of a property right that would implicate the mail fraud statute.

Federal Rule of Criminal Procedure 7(c), which governs the "Nature and Contents" of indictments, provides as follows:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government . . . A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified items.

Count One of the Superseding Indictment charges the PNS defendants and others with Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. §§ 1341 and 1349. Count Two of the Superseding Indictment charges all defendants with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 846, 803(32)(A), 813, and 841(a)(1). Count Three of the Superseding Indictment charges defendant Austin and others with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). The essential elements of the conspiracy crimes charged in Counts I, II, and III are as follows:

(1) the defendant agreed to commit the crime of [mail fraud[5] or distribution of a controlled substance[6] or money laundering[7]];

---

[5] To convict on the substantive offense of mail fraud, the Government must demonstrate the existence of a scheme to defraud and the use of mail in furtherance of such scheme. 18 U.S.C. §§ 1341 and 1349; See Pereira v. United States, 347 U.S. 1, 8 (1954).

(2) the defendant knew of the conspiracy; and

(3) the defendant knowingly joined and participated in the conspiracy.

United States v. McKanry, 628 F.3d 1010, 1016 (8th Cir. 2011) (quoting United States v. Price, 542 F.3d 617, 620 (8th Cir. 2008)).

A review of the Superseding Indictment reveals that it sets forth each of the essential elements in all three counts, consistent with the elements of the offense set forth in the applicable statutes. The Eighth Circuit has repeatedly held that constitutional sufficiency does not rest on whether the indictment uses specific words or alleges every possible way in which defendant may have committed the crimes charged. Eg., United States v. Redzic, 627 F.3d 683, 689 (8th Cir. 2010); United States v. Henderson, 416 F.3d 686, 693 (8th Cir. 2005). The fundamental inquiry is whether the indictment sufficiently apprises defendant "of the charges he would be required to defend against, allowing him to effectively prepare for trial." United States v. Diaz-Diaz, 135 F.3d 572, 576 (8th Cir. 1998) (internal quotations omitted) (quoting United States v. Klaphake, 64 F.3d 435, 438 (8th Cir. 1995)). Notably, "an indictment for conspiring to commit an offense in which the conspiracy is the gist of the crime" may have less detail and precision than an indictment for the substantive offense. United States v. Starr, 584 F.2d 235, 237 (8th Cir. 1978) (quoting Wong Tai v. United States, 273 U.S. 77, 81 (1927)). The defendants will have the opportunity at trial to challenge the Government's ability to meet their burden as to each conspiracy charge.

The Court is not persuaded that the PNS defendants are not adequately apprised of the mail fraud charge against them. The mail fraud charge in Count One of the Superseding Indictment alleges that "Mayan" and "4Bidden" products were represented by the defendants to be "incense" and not for "human consumption," when in truth they were synthetic cannabinoids

---

[6] To convict on the substantive offense of distribution of a controlled substance analogue, the Government must prove that defendant "knowingly or intentionally . . . distribute[d] . . . a controlled substance" analogue as defined in 21 U.S.C. § 803(32)(A) and 813. 21 U.S.C. § 841(a)(1); see Sullivan, 714 F.3d at 1107.

[7] To convict on the substantive offense of money laundering, the Government must demonstrate that the defendants conducted or attempted to conduct a financial transaction (1) that effected interstate or foreign commerce, (2) with funds involving the proceeds of an unlawful activity, (3) with knowledge that the funds represented proceeds of an unlawful activity, and (4) with the intent to promote the carrying on of the unlawful activity. 18 U.S.C. § 1956(h); MANUAL OF MODEL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE EIGHTH CIRCUIT, Instruction No. 6.18.1956A (2014 edition).

13

that contained compounds known as UR-144 and XLR-11. (Doc. 146 at 3). Count One also includes a "manners and means" section describing specific facts involving the PNS defendants, in that a parcel containing Mayan products was delivered to the PNS defendants from Dynamic Scents. (Doc. 146 at 5). The indictment cites to the relative statutes, provides a timeframe for the conspiracy, and describes a specific instance of the use of mail, identifying the PNS defendants as the address recipient, as well as the date and tracking number of the mailing.

For the reasons set forth above, the Court does not find that the Superseding Indictment is so defective that it cannot be said to charge the offenses by any reasonable construction. The Court finds that the Superseding Indictment meets the low threshold provided by Rule 7(c) of the Federal Rules of Criminal Procedure and is sufficient to adequately inform defendants of the charges against them, to enable them to prepare a defense, and to bar future prosecution of the same offense. Consequently, defendants' contentions are without merit and should be denied.

### D. Conclusion

Defendants' claims that the Superseding Indictment should be dismissed because the Analogue Act is unconstitutionally vague, the substances which are the subject of the charges are not analogues, the Analogue Act constitutes an impermissible delegation of authority by Congress to the Executive Branch, and because it is insufficient to state the offenses in Counts I, II, III, and XI are without merit and should be denied.

IT IS THEREFORE RECOMMENDED that the motion and amended motion of defendants Charles S. Austin, Jr., and Puff N Snuff, LLC. to dismiss the Indictment (docs. 110, 139), be DENIED as moot.

IT IS FURTHER RECOMMENDED that the motions of defendants Alexander McMillin (doc. 122), Patrick R. Hawkins (doc. 123), Matthew A. Hawkins (doc. 124), and Molly Jane Carmichael (doc. 125) to dismiss various counts of the Indictment be DENIED as moot.

IT IS FURTHER RECOMMENDED that the motion of defendants Charles S. Austin, Jr., and Puff N Snuff, LLC. to dismiss the Superseding Indictment (doc. 222) be DENIED.

IT IS FURTHER RECOMMENDED that the motions of defendants Wesley Adam Upchurch (doc. 217), Alexander McMillin (doc. 218), Patrick R. Hawkins (doc. 221), Matthew A. Hawkins (doc. 220), and Molly Jane Carmichael (doc. 219) to dismiss various counts of the Superseding Indictment be DENIED.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 21st day of January, 2015, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge